# THE SMITH-HIPPEN CO.

## *v.*

## STATE OF ILLINOIS.

*Opinion filed December 29, 1906.*

1. STATE—CONTRACTS—*appropriation must be available for.* In order for a State board to make a valid contract for the performance of services, it must have an appropriation available to pay for the same.

2. RECOVERY—*when none may be had.* Claimant did certain dredging in an outlet of Spring Lake, in Tazewell County, which lake and its outlet were under the control of the Canal Commissioners. The commissioners did not authorize the work. One of its members advised claimant that the board had no appropriation available, the appropriation by the General Assembly having been held invalid (*Burke* v. *Snively*, 208 Ill., 328). *Held*, that no liability attached against the State to pay for the dredging.

3. SPRING LAKE—*navigable when.* Spring Lake was navigable and had a natural outlet into the Illinois River until 1877, when the outlet was obstructed by the State by the construction of Copperas Creek Lock. This artificial outlet having become obstructed was dredged by the Canal Commissioners in 1890 and 1895, by authority of the General Assembly.

4. JURISDICTION—*class of claims Court may allow.* The Court of Claims is vested with authority to allow legal claims only.

Wm. A. Potts, for Claimant.

W. H. Stead, Attorney General, for State.

There is practically no controversy about the facts in this case. Spring Lake is a lake in Tazewell County that, prior to 1877, was naturally navigable and had a natural and navigable outlet into the Illinois River. In 1877 this natural outlet was obstructed and closed by the construction by the State of Copperas Creek Lock, under the authority of an Act of the General Assembly in force July 1, 1877, the State, under the direction of its Canal Commissioners, constructed an artificial outlet from the river to such lake. In 1890 such artificial outlet becoming obstructed by deposit from the river, was dredged out by the Canal Commissioners,

by direction of resolution of the General Assembly; and again in 1895, by like authority. In 1904 claimants, grain dealers and the owner of an elevator on the banks of such lake, and dependant, in the conduct of their business, on the transportation facilities afforded by such lake, its outlet and the river, and others similarly situated, called the attention of Mr. Snively, the President of the Canal Commissioners, to the fact that said outlet was again obstructed and closed to navigation by deposit from the river; and requested such board to remove such obstruction and restore its navigability. The matter was not brought to the attention of the board, as a board, at least; and the board took no action whatever in regard to the matter. But Mr. Snively, President of the board, advised claimants that the board had no money appropriated, or available for the purpose; the appropriations made by the General Assembly available for such purposes having been held invalid by the courts (see *Burke* v. *Snively,* 208 Ill., 328); that if the commissioners had the funds they would do the work; "that they (claimants) would have to try and get some other dredge boat to clean out this obstruction and take our (claimants') chances of collecting it from the State," claimant having no correspondence or conversation with the board or any of the other commissioners, and only that single conversation with Mr. Snively. Mr. Unlund of claimant's company testifying: "Q. In that conversation, then, Mr. Snively did not promise, on behalf of the Canal Commissioners, or in behalf of the State, that the Canal Commissioners, or the State would be responsible for it, is that right? A. No sir; I do not think that he promised to do that; only suggested that we should bring in our claim to the State (Court of Claims) and thought it would be allowed. He made no agreement with us that the Canal Commissioners would pay it." Under such condition claimants procured the dredging of such outlet, at a cost to them of $2,572.40, a reasonable sum for the service, so far

as shown by the evidence, and the amount for which claim is now made; claim therefore being made in due form.

The question presented is whether on this state of facts the State of Illinois is liable to claimants for such amount expended by them.

Did the State, through its Canal Commissioners, make an express contract to pay? If not, do the facts raise an implied contract?

It can be assumed that Spring Lake was under the general jurisdiction of the Canal Commissioners. But if so, did the board expressly contract for the work? Counsel for claimants do not even so contend. The matter was never before the board. The board had no appropriation available for the purpose, and this was known to claimants before they did the work. Having no appropriation, not only did the board have no authority to authorize such expenditure, but they were by positive and penal enactment expressly forbidden to authorize such expenditure. It may be taken for granted then, that not only did the board make no express contract for the work, but that they also had no power to make it.

It follows, then, we think as a plain matter of course, that the Canal Commissioners, having no power or authority to make such contract, the law will imply none. It would be subversive of all legal limitation of official acts to hold that that could be done by indirection, that could not be directly done. The law recognizes no such absurdity.

Indeed, to do full justice to claimant's counsel, he does not contend for such doctrine, but invokes the supposed equitable jurisdiction of this Court, under paragraph five of section three, of the Act creating and defining the jurisdiction of this Court, viz: "and such Court shall hear such claims according to its rules and established practice, and determine the same according to the principles of equity and justice, etc." At first blush it might appear that counsel is justified

in the position taken.  It was clearly the duty of the State to have done this work.  The work, so far as shown, was honestly and efficiently done for the benefit of the State.  And it would seem to follow that the State is equitably bound to pay for the same.  But it has been the uniform holding of this Court, that it was not the intent of the clause in question to authorize the Court to allow claims other than legal claims.  The legislature is the supreme authority of the State, in the matters of the making of its laws and its appropriations; and we have not felt at liberty to arrogate to ourselves the power contended for, by virtue of the general clause in question, which would be the practical usurpation of both of those purely legislative functions. We are therefore of the opinion that claimants are not entitled to judgment.